# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREFUSION 303, INC.,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>SIGMA INTERNATIONAL,<br><br>　　　　　　　　Defendant. | CASE NO. 10cv0442 DMS (WMC)<br><br>**ORDER CONSTRUING PATENT CLAIMS** |

This matter came before the Court for a claim construction hearing on June 20, 2011. John Kinton and Richard Mulloy appeared and argued on behalf of CareFusion 303, Inc. ("CareFusion") and Randolph Oppenheimer and Michael Zeliger appeared and argued on behalf of Sigma International ("Sigma"). After a thorough review of the parties' claim construction briefs and all other material submitted in connection with the hearing, the Court issues the following order construing the disputed terms of the patent at issue in this case.

## I.
## BACKGROUND

On February 26, 2010, CareFusion filed the present Complaint against Sigma alleging infringement of United States Patent Number 6,347,553 ("the '553 Patent"). Sigma filed an Answer and Counterclaim for declaratory judgment of non-infringement and invalidity on April 23, 2010. CareFusion filed its Answer to the Counterclaim on May 17, 2010. The '553 Patent is currently undergoing reexamination in the United States Patent and Trademark Office ("PTO").

## II.

## DISCUSSION

Claim construction is an issue of law, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), and it begins "with the words of the claim." *Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1142 (Fed. Cir. 2005) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Generally, those words are "given their ordinary and customary meaning." *Id.* (citing *Vitronics*, 90 F.3d at 1582). This "'is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention.'" *Id.* (quoting *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)). "The person of ordinary skill in the art views the claim term in the light of the entire intrinsic record." *Id.* Accordingly, the Court must read the claims "'in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). In addition, "'the prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be.'" *Id.* (quoting *Phillips*, 415 F.3d at 1318).

Here, the only patent at issue is the '553 Patent. The '553 Patent is entitled, "Force Sensor Assembly for an Infusion Pump." CareFusion alleges Sigma infringes claims 1, 2, 3, 8, 9, 11, 12, 17, 22 and 23 of the '553 Patent. The Court discusses these claims below.

**A.   Claim 1**

Claim 1 of the '553 Patent provides:

A force sensor assembly for use in peristaltic pumps, comprising:

a housing;

a load cell at least partially disposed within said housing;

a plunger, pivotable about an axis, where said plunger comprises;

    an upper surface; and

    an underside surface distal from said upper surface where said underside surface cooperates with said load cell; and

a means for reducing said load cell's sensitivity to the positioning of an applied force on said upper surface.

There are three terms and phrases in claim 1 of the '553 Patent that the parties agree require construction. They are: (1) "plunger, pivotable about an axis," (2) "distal," and (3) "a means for reducing said load cell's sensitivity to the positioning of an applied force on said upper surface."

### 1. "Plunger, pivotable about an axis"

CareFusion asserts this phrase should be construed according to its plain and ordinary meaning, while Sigma argues the phrase should be construed as "the plunger rotates about an axis." The difference in these proposed constructions is negligible. Indeed, Sigma's proposed construction merely substitutes "rotates" for "pivotable" without corresponding support in the intrinsic evidence. Accordingly, the Court finds that one of ordinary skill in the art, after reading the claims and consulting the intrinsic evidence, would construe the phrase "plunger, pivotable about an axis" according to its plain and ordinary meaning.

### 2. "Distal"

As with the preceding phrase, CareFusion argues this term should be construed according to its plain and ordinary meaning, while Sigma asserts its should be construed as "located opposite, and away or remote from." The Court agrees with CareFusion that this term is readily understandable to the person of ordinary skill in the art. Accordingly, the Court construes this term according to its plain and ordinary meaning.

### 3. "A means for reducing said load cell's sensitivity to the positioning of an applied force on said upper surface"

The final phrase at issue in claim 1 is "a means for reducing said load cell's sensitivity to the positioning of an applied force on said upper surface." The parties agree this phrase should be construed according to 35 U.S.C. § 112, ¶ 6, which states:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or act in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6. The first step in construing a claim under this statute is identifying the specific function recited by the claim. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1321 (Fed. Cir. 2003) (citations omitted). "Once the functions performed by the claimed means are identified, we must then

1  ascertain the corresponding structures in the written description that perform those functions." *Id.*
2  (citing *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002)).

3  Here, the parties agreed initially that the recited function was "reducing a load cell's sensitivity
4  to the positioning of an applied force on the upper surface of the plunger." (*See* Docket No. 51 at 6-8.)
5  Thereafter, CareFusion filed a response to an office action in the reexamination proceeding. Sigma
6  argues that response reflects CareFusion's disavowal of claim scope, which prompted Sigma to amend
7  its proposed function as "reducing a load cell's sensitivity to the positioning of an applied force on the
8  upper surface of the plunger, *where the applied force is not held in place*." (*See* Docket No. 71 at 2)
9  (emphasis added). CareFusion disputes that it disavowed any claim scope, and thus disagrees with
10 Sigma's proposed function.

11 During reexamination, the examiner rejected claim 1 as anticipated by United States Patent
12 Number 5,335,551 to Ohnishi ("the '551 Patent" or "Ohnishi"). With respect to the claim language at
13 issue here, the examiner stated "Ohnishi has a means for reducing the sensitivity of the load cell to the
14 positioning of the applied force, e.g. the pivotable hinge 41." (Sigma's Supp. Br., Ex. A at 8.) In an
15 effort to overcome that rejection, the patentee stated, among other things, that "the applied force in the
16 '551 patent is always positioned the same and there is no need to address the 'positioning of an applied
17 force on said upper surface' of the plunger." (Sigma's Supp. Br., Ex. C at 8.) The examiner found the
18 patentee's arguments about Ohnishi persuasive for several reasons, including that "Ohnishi does not
19 compensate for the positioning of the applied force, as the force is never misaligned on the plunger."
20 (Sigma's Supp. Br., Ex. D at 9.) It is this exchange that gives rise to Sigma's argument that the recited
21 function of the disputed phrase should be construed as "reducing a load cell's sensitivity to the
22 positioning of an applied force on the upper surface of the plunger, *where the applied force is not held*
23 *in place*." In essence, Sigma argues CareFusion disavowed that its invention covers a sensor where the
24 force applied to the sensor is held in place.

25 The Federal Circuit has stated that "an applicant can make a binding disavowal of claim scope
26 in the course of prosecuting the patent, through arguments made to distinguish prior art references. Such
27 argument-based disavowals will be found, however, only if they constitute clear and unmistakable
28 surrenders of subject matter." *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1177 (Fed. Cir.

2008) (citations omitted). "In order to constitute binding surrenders of claim scope, the statements in question must be such that 'a competitor would reasonably believe that the applicant had surrendered the relevant subject matter.'" *Id.* (quoting *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1457 (Fed. Cir. 1998) (en banc)). Here, the patentee was attempting to distinguish Ohnishi from the claims of the '553 Patent. Its arguments were directed primarily to the lack of a plunger in Ohnishi, and the lack of other corresponding structures for performing the recited function of the '553 Patent. In making that distinction, the patentee explained that in Ohnishi the force is "always positioned the same[.]" (Sigma Supp. Br., Ex. C at 8.) In other words, the tube "maintain[s] a single position[ ,]" (*id.* at 7), unlike the tube in the '553 Patent, which is subject to moving around. There is nothing in this exchange, however, that amounts to a "clear and unmistakable surrender of subject matter" concerning the function recited in the claim. Accordingly, the Court adopts CareFusion's proposed function as "reducing a load cell's sensitivity to the positioning of an applied force on the upper surface."

        Having identified the recited function of the claim, the Court now turns to the issue of structure. CareFusion asserts the Court should construe the corresponding structure as "[t]he combination of: (1) a shaped upper surface and/or a shaped underside surface with (2) a hinge pivotable about an axis and/or flexible supports around the circumference of the plunger, and equivalents thereof," while Sigma offers a more specific definition of the structure. (Docket No. 71 at 2-3.) Specifically, Sigma offers four different structures that correspond to the function, all of which include a rotatable hinge, omit a shaped underside surface, and individually include the shapes identified in the specification. (*See id.*)

        Of these two competing constructions, the Court finds CareFusion's proposed structure to be more accurate for several reasons. First, Sigma's first proposed structure, a rotatable hinge, would be incapable of performing the function by itself. Second, Sigma's second proposed structure improperly limits the shape of the upper surface to an hourglass while the claims themselves allow for the upper surface of the plunger to be shaped in the form of a circle or a square. (*See* '553 Patent, col. 5, lines 52-55.) Third, none of Sigma's proposed structures allow for a shaped underside surface or for the use of flexible supports in lieu of a hinge. Sigma argues this is so because the shaped underside surface and the flexible supports are not "clearly linked" to the recited function. However, the specification states,

> Both the shape of the plunger's upper surface 214 *and the shape of the plunger's underside 218*, may be varied to provide optimum results. This embodiment utilizes a

> circular shaped upper surface 214 and *a chamfered underside 218. The underside 218 of the hinged plunger 216 is shaped so that it preferably contacts with the load cell 206 at a single contact point. Other shapes, such as for example a semicircular shaped underside, may also be utilized.*

(*Id.*, lines 48-55) (emphasis added). The specification also states, "The actuation plunger may also be held by *flexible supports* at several points around its circumference to minimize moment arm changes with tubing off-center positioning." (*Id.*, col. 5, lines 12-15) (emphasis added). Thus, contrary to Sigma's argument, the specification does link the shaped underside surface and the use of flexible supports to the performance of the recited function. CareFusion's proposed construction allows for these possibilities, and is more consistent with the specification. Accordingly, the Court finds the corresponding structures for performing the recited function are "the combination of: (1) a shaped upper surface and/or a shaped underside surface with (2) a hinge pivotable about an axis and/or flexible supports around the circumference of the plunger, and equivalents thereof."

**B.     Claim 2**

Claim 2 of the '553 Patent recites: "A force sensor assembly according to claim 1, wherein said means for reducing said load cell's sensitivity, comprises an upper surface for receiving an intravenous tube perpendicular to said axis." There is one term in this claim that requires construction: "an upper surface." CareFusion asserts this term should be construed according to its plain and ordinary meaning, while Sigma argues the term is indefinite.

Sigma has not met its burden to show that this term is indefinite. Rather, the Court agrees with CareFusion that one of ordinary skill in the art, after reading the claims and consulting the intrinsic evidence, would construe the term "an upper surface" according to its plain and ordinary meaning.

**C.     Claim 3**

Claim 3 of the '553 Patent recites: "A force sensor assembly according to claim 2, wherein said upper surface is shaped to compensate for variations in measured force caused by the misalignment of said applied force." There is one phrase at issue in this claim: "shaped to compensate for variations in measured force caused by the misalignment of said applied force."[1] CareFusion asserts this phrase

---

[1] This phrase also appears in claim 22. The Court's construction of this phrase in claim 3 applies equally to the phrase in claim 22.

1  should be construed according to its plain and ordinary meaning. Sigma argues its should be construed
2  as "in an orientation with an intravenous tube perpendicular to the hinge axis, an hourglass upper surface
3  or in an orientation with an intravenous tube parallel to the hinge axis, a teardrop or triangular upper
4  surface shape. In addition, the applied force is not held in place."

5        The Court declines to adopt Sigma's proposed construction for several reasons. First, it is clear
6  from claim 2 that in claim 3 the intravenous ("IV") tube is positioned perpendicular to the hinge axis.
7  Thus, the language in Sigma's proposed construction, "in an orientation with an intravenous tube
8  perpendicular to the hinge axis," is redundant and unnecessary. The language in claim 2 also limits
9  claim 3 to those situations in which the IV tube is perpendicular to the hinge axis. Thus, the language
10 in Sigma's proposed construction concerning the shape of the upper surface when the IV tube is oriented
11 parallel to the hinge axis is misplaced. Second, Sigma's proposed construction unfairly limits the
12 possible shapes of the upper surface to an hourglass. There is nothing in the claim language or the
13 intrinsic evidence to warrant this limitation, and indeed it is inconsistent with claim 4, which states the
14 upper surface may take the shape of a circle, square *or* hourglass. For these reasons, the Court agrees
15 with CareFusion that this phrase is readily understandable to the person of ordinary skill in the art.
16 Accordingly, the Court construes this term according to its plain and ordinary meaning.

17 **D.   Claim 8**

18       Claim 8 of the '553 Patent states:
19       A force sensor assembly according to claim 1, wherein said plunger further comprises:
20       a free end; and
21       a pivot end located at said axis.
22 The only term at issue in this claim is "free end." CareFusion asserts this term should be construed
23 according to its plain and ordinary meaning, while Sigma argues the term should be construed as "end
24 of the plunger opposite the pivot end which is free to move in an actuation direction." The Court agrees
25 with CareFusion that this term is readily understandable to a person of ordinary skill in the art.
26 Accordingly, the Court construes this term according to its plain and ordinary meaning.

27 / / /

28 / / /

**E.     Claim 9**

Claim 9 of the '553 Patent recites: "A force sensor assembly according to claim 8, wherein said pivot end is rotatably coupled to said housing."  The only phrase at issue in this claim is "rotatably coupled."[2]  CareFusion asserts this phrase should be construed according to its plain and ordinary meaning, while Sigma argues the phrase should be construed as "jointed or linked in a manner that allows rotation, but restricts other forms of movement, such as angulation."  After reviewing the intrinsic evidence cited by the parties in support of their respective proposed constructions, the Court agrees with CareFusion that this phrase needs no construction to a person of ordinary skill in the art.  Accordingly, the Court construes this phrase according to its plain and ordinary meaning.

**F.     Claim 11**

Claim 11 of the '553 Patent states: "A force sensor assembly according to claim 8, wherein said pivot end is rotatably coupled to said housing by means of a hinge."  In this claim, the parties dispute the proper construction of the term, "hinge."[3]  As with most of the claim terms and phrases discussed above, CareFusion asserts this term should be construed in accordance with its plain and ordinary meaning.  Sigma argues the term should be construed as "a jointed or flexible device that allows the turning or pivoting of a part on a stationary frame and that minimizes or prevents angulation."  Again, the Court agrees with CareFusion that this term needs no construction to a person of ordinary skill in the art.  Accordingly, the Court construes this term according to its plain and ordinary meaning.

**G.     Claim 12**

Claim 12 of the '553 Patent recites: "A force sensor assembly according to claim 11, wherein said [ ] hinge is a living hinge."  The only term at issue in this claim is "living hinge."[4]  CareFusion asserts this term should be construed as "a joint made of flexible material that acts as a hinge between

///

---

[2] This phrase also appears in claim 22. The Court's construction of this phrase in claim 9 applies equally to the phrase in claim 22.

[3] This term also appears in claim 22. The Court's construction of this term in claim 11 applies equally to the term in claim 22.

[4] This term also appears in claim 23. The Court's construction of this term in claim 12 applies equally to the term in claim 23.

two parts." Sigma argue the term should be construed as "a resilient metal or plastic strip which acts as a hinge."

Sigma's proposed construction relies primarily on a portion of the specification describing Figure 2 of the Patent. That portion of the specification states, "The living hinge may for example be a resilient metal or plastic strip, as is known in the art." ('553 Patent, co. 3, lines 43-44.) Sigma attempts to take this portion of the specification and import it into the Court's construction of the claim term. However, the Court declines to do so. *See Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir. 2010) (stating limitations in specification should not be read into claims). Instead, the Court adopts CareFusion's proposed construction of the term. Accordingly, the Court finds that one of ordinary skill in the art, after reading the claims and consulting the intrinsic evidence, would construe the term "living hinge" as "a joint made of flexible material that acts as a hinge between two parts."

**H.    Claim 22**

The final claim at issue here is Claim 22, which recites:

A force sensor assembly adapted to reduce a load cell's sensitivity to the positioning of an applied force, comprising:

a housing;

a load cell at least partially disposed within said housing;

and

a plunger rotatably coupled to said housing by means of

a hinge said plunger without further comprising;

an upper surface which is shaped to compensate for variations in measured force caused by the misalignment of said applied force; and

an underside surface distal from said upper surface,

such that in use a force applied to said upper surface of said plunger is transferred to said load cell by said underside of said plunger pivoting into contact with said load cell.

The parties dispute the meaning of the phrase, "pivoting into contact," with CareFusion asserting the phrase should be construed according to its plain and ordinary meaning, and Sigma arguing the phrase means "rotating into contact." As with the first disputed claim phrase, "plunger, pivotable about an axis," Sigma's proposed construction of the current phrase simply substitutes "rotating" for "pivoting"

1 | without any support from the intrinsic evidence. Accordingly, the Court agrees with CareFusion that
2 | this phrase needs no construction to a person of ordinary skill in the art. Accordingly, the Court
3 | construes this phrase according to its plain and ordinary meaning.

## III.

## CONCLUSION

For the reasons stated above, the disputed terms are interpreted as set forth in this Order.

**IT IS SO ORDERED**.

DATED:  August 25, 2011

_____
HON. DANA M. SABRAW
United States District Judge